## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

JULIUS C. GREEN,     :

  Plaintiff,    :

vs.        :  CA 07-0411-BH-C

MICHAEL J. ASTRUE,   :
Commissioner of Social Security,
          :
  Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. This action has been referred to the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the defendant's proposed report and recommendation,[1] it is determined that the decision to deny benefits should be affirmed.

Plaintiff alleges disability due to degenerative disc disease with disc

---

[1]  This case is decided upon the written record without the benefit of oral argument. (*See* Doc. 19)

space narrowing and endplate irregularity at the thoracolumbar junction,
circumferential bulge at T2 with a mild left paracentral broadbased protrusion,
circumferential bulge posteriorly at the L3-4 level, and very mild foraminal
stenosis bilaterally at L3-4 and some foraminal stenosis at L4-5. The
Administrative Law Judge (ALJ) made the following relevant findings:

> 3.    The claimant has "severe" impairments, including
> degenerative disc disease of the lumbar spine with very mild
> stenosis, lumbar radiculapathy, and mild scoliosis of the lumbar
> spine.
>
> 4.    The claimant's impairments, considered individually and
> in combination, do not meet or equal in severity any impairment
> set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5.    The claimant's allegations of pain and functional
> limitations are not credible.
>
> 6.    The claimant retains the residual functional capacity to
> perform work within the limitations set forth in Stephenson's
> Residual Physical Functional Capacity Assessment. In other
> words, the claimant can perform a range of medium exertional
> work.
>
> 7.    The claimant can perform past relevant work.
>
> 8.    The claimant is not disabled within the meaning of the
> Social Security Act.

(Tr. 18) The Appeals Council affirmed the ALJ's decision (Tr. 3-5) and thus,
the hearing decision became the final decision of the Commissioner of Social
Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as a small products assembler, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as

well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792

F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability

to return to his past relevant work, the Commissioner of Social Security has an

obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578,

581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61

recognizes three possible tests for determining whether or not a claimant

retains the capacity to perform his past relevant work. They are as follows:

> 1.     Whether the claimant retains the capacity
> to perform a past relevant job based on a broad
> generic, occupational classification of that job,
> e.g., "delivery job," "packaging job," etc.[3]
>
> 2.     Whether the claimant retains the capacity
> to perform the particular functional demands and
> job duties peculiar to an individual job as he or
> she actually performed it.
>
> 3.     Whether the claimant retains the capacity
> to perform the functional demands and job duties
> of the job as ordinarily required by employers

---

[2]     This Court's review of the Commissioner's application of legal principles,
however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3]     As recognized in the ruling, use of this test is likely to be "fallacious and
insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common
characteristic, they often involve quite different functional demands and duties requiring varying
abilities and job knowledge."

throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that he retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

In this case, the ALJ has relied upon test three above to determine that the claimant can perform his past relevant work as a small products assembler. (*See* Tr. 17 ("I find that the claimant retains the residual functional capacity to . . . perform a range of medium exertional work. At the hearing, I asked the vocational expert to identify work performed by the claimant in the past fifteen years, indicating the title of the job, and the skill and exertional level of each job. The vocational expert testified that the claimant had worked as a: . . . Small Products Assembler (unskilled, light). 20 C.F.R. § 404.1520(e) provides that an individual will be found 'not disabled' when it is determined that a claimant retains the residual functional capacity to perform past relevant work. This includes performance of the actual functional demands and duties of a

---

[4]      The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

particular past relevant job or the functional demands and duties of the occupation as generally required by employers throughout the national economy. The vocational expert was queried as to whether the above-described residual functional capacity would preclude the performance of any of the identified jobs. The vocational expert testified that the residual functional capacity would not preclude the performance of work as a Small Products Assembler. Upon consideration of the record, including the vocational expert's testimony, I find that the claimant retains the residual functional capacity to perform his past relevant work."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform his past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his . . .  PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all

the duties of that work and evaluate her ability to perform them in spite of her

impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."

.     .     .

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision.  Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.   Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.  Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

7

SSR 82-62.  In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation.  *Id.*

It is contended that the ALJ made the following errors: (1) he erred in finding plaintiff's testimony of disabling pain disproportionate to the objective evidence; (2) he erred in finding plaintiff's testimony inconsistent with the description of his daily activities as reported in a physical activities questionnaire; and (3) he erred in failing to give substantial weight to plaintiff's longitudinal medical history of pain treatment. The undersigned considers all three arguments together since they all relate to plaintiff's allegations of pain.

The Eleventh Circuit has established a three-part pain standard that applies when a claimant attempts to establish his disability through testimony of pain.  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively

determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "A claimant may establish that h[is] pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ performed the following evaluation of plaintiff's complaints of severe disabling pain and other restrictions:

> I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective evidence. The claimant testified that he lives with his girlfriend. He was born on November 17, 1960, making him 45 years old. He completed the 10th grade and can read, write and do simple math calculations. His past employment history includes work as a painter, shipping loader, and plumber. He has not worked since March 19, 2004, when he sustained a work-related injury to his back. At the time of his injury, he had been lifting cast iron lavatories, some possibly weighing over 100 pounds. He is presently unable to work because prolonged standing and sitting causes lower back and leg pain. If he had the option to sit and stand at will, he does not believe he could do these activities. In terms of functioning, he can stand approximately 45 minutes to

an hour at one time without hurting and sit about 45 minutes to an hour at one time without hurting. After that length of time he needs to change positions. He uses a cane to walk because his knee gives away. Bending and crawling causes pain. He can occasionally lift 15 pounds or a sack of groceries. If he lifts a sack of groceries, he needs to lie down. Lying down helps his pain somewhat. He generally lies down 4 hours out of an 8-hour day. He takes medications, including Lortab, Flexeril, Aleve and Tylenol P.M. He tries not to take his prescription medications every day because he has only twenty pills for a one-month supply. Side effects from medication include dry mouth and drowsiness. When he takes his medication, he naps during the day. With regard to his activities of daily living, he walks outside, sometimes to the creek behind his house, takes care of his dog, and rides to the grocery store with his girlfriend.

The objective evidence reflects that the claimant has a history of back and leg pain. He initially saw Dr. Okoye on March 22, 2004 []. This was three days after his alleged work-related injury. The doctor noted that the claimant had stepped off a truck and caught a cramp in his left hip. His pain medication at that time was over-the-counter Tylenol. The doctor diagnosed sciatic and muscle spasm and prescribed Lortab 5 and Flexeril, 10 mg. at hours of sleep (HS). Three days later, on March 25th, the claimant returned to the doctor's office with complaint of lumbosacral pain. Clinical findings, however, appeared unremarkable with "0 back" and full range of motion (ROM) of the extremities. The doctor provided 20 pills of Lortab 5.

On March 28, 2004, the claimant visited the emergency [room] where he complained of lower back pain radiating into the *left* leg over a one-week period []. In the Emergency Department Musculoskeletal Nursing Assessment form, he rated his back pain at 10/10 []. While 10/10 represents the most severe pain level possible, this appears inconsistent with the doctor's observations during the physical examination. The ER doctor observed the claimant to be in no acute distress (NAD). Clinical findings did include some tenderness and muscle spasm to the

left side of the back. On the other hand, the claimant had no pain upon straight leg raising on the *left side*. While he did have pain upon straight leg raising the right side, this appeared inconsistent with claimant's allegations of left leg radiation. Other clinical findings showed normal mood and affect, no sensory or motor deficits, normal reflexes, and full range of motion of the extremities. The ER doctor diagnosed acute low back pain and provided shots of Toradol and Norflex.

M. David, M.D., and David Herrick, M.D., provided medical care during a period between April 2004 and June 2004 []. Their progress notes show the claimant complained of low back pain with radiation into the left leg. They also noted that claimant was using a cane for ambulation at that time; however, no doctor appears to have prescribed this []. Clinical findings, for the most part, were unremarkable. The claimant had some decreased range of motion of his back and decreased sensation to light touch in the left tibia to the ankle consistent with left leg radiculopathy. Otherwise, he was neurologically intact with normal (5/5) motor strength and symmetric reflexes. His lumbar spine was nontender to palpitation with no muscle spasms. X-rays of the lumbar spine revealed scoliosis but this was characterized as "mild" in severity []. Magnetic resonance imaging of the lumbar spine revealed degenerative disc disease with disc bulging. While this caused some foraminal stenosis at levels L3-4 and L4-5, its severity was also characterized as "very mild" or "slight"[]. Treatment was conservative in nature. The claimant underwent three lumbar epidural steroid injections and was prescribed samples of anti-inflammatory drug (i.e., Mobic) and a low dose of Elavil, 10 mg., to help with sleep at night. During this time period, Dr. Davis was of the opinion that the claimant could engage in sedentary or light duty work.

Four months after his alleged injury, on July 23, 2004, the claimant underwent a functional capacity assessment at Rehab Associates []. The evaluator stated in his report that the claimant provided good effort during testing but his reported levels of pain were out of proportion with observations. The claimant

11

rated his pain at the beginning of the test at "6"– on a 10-point pain scale, 6 is moderate in intensity– but appeared pleasant, could carry on normal conversation and did not seem to be in distress. By use of the Oswestry Low Back Pain Disability Questionnaire, the claimant rated himself in the crippled category; however, this was not consistent with his demonstrated function during testing, such as his ability to lift 65 pounds, lift repetitively, bend with full range, and climb stairs, etc. The evaluator concluded that the claimant demonstrated the ability to perform work-related activities at the medium to heavy physical demand level as defined by the *Dictionary of Occupational Titles* (DOT). The claimant could occasionally lift 45 to 65 pounds and frequently lift 25 to 27.5 pounds. He could occasionally crouch and frequently bend, kneel, reach and bend/crouch. He could use his hands for simple grasping and fine manipulation. He could push/pull, climb stairs and balance. Though he used a cane at times during the evaluation, he was observed to move well without it.

On July 30, 2004, Dr. Davis [] opined that the claimant had reached maximum medical improvement and assessed a 5% impairment rating of the whole person. He agreed with Rehab Associates' functional assessment, which provided restrictions at the medium to heavy physical demands. Dr. Davis did not recommend back surgery and released the claimant from his care[].

Treatment notes, compiled from August 2004, forward, indicate that the claimant has continued to see Dr. Herrick generally every three months[]. Treatment has consisted primarily of short-term supplies of Lortab and Flexeril. The doctor's records do not support claimant's allegations of significant side effects from medications. They are, in fact, absent any complaints whatsoever of side effects. The claimant required no further lumbar steroid injections until March 2006. He underwent a couple of steroid injections in March and April 2006. I note, with particularity, that these injections took place shortly before the May 26, 2006 disability hearing.

The claimant has testified to having very restricted activities of daily living. He basically does no chores and lies down half of the day. However, in a physical activities questionnaire, dated April 17, 2004, he indicated a more active lifestyle[]. During the day he washed dishes, emptied the cat box, burned trash, walked, and did yard work.

As to opinion evidence, Stuart X. Stephenson III, M.D., completed a Residual Physical Functional Capacity Assessment, dated September 9, 2004[]. Therein, he indicated that the claimant can occasionally lift and/or carry no more than 50 pounds and frequently lift and/or carry no more than 25 pounds. He can stand or walk about 6 hours and sit about 6 hours, in an 8-hour workday. He is unlimited in his ability to push and pull with his extremities. He can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl and occasionally climb ladders, ropes and scaffolds. He has no manipulative, visual or communicative limitations. He is unlimited in his ability to work at activities involving extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases and poor ventilation but must avoid all exposure to dangerous machinery and unprotected heights. In his opinion, the severity or duration of claimant's symptoms are disproportionate to the expected severity or expected duration on the basis of claimant's medically determinable impairments. I give significant weight to this opinion. While Dr. Stephenson is not an examining or treating physician, he had the opportunity to review the medical record, particularly the magnetic resonance imaging of the lumbar spine. His opinion that the claimant can perform a range of medium exertional work is generally consistent with the opinion of claimant's treating physician Dr. Davis, who agreed with and accepted the functional capacity evaluation done by Rehab Associates in July 2004. That evaluation is somewhat less restrictive and allows for medium and heavy exertional work activity.

(Tr. 14-17 (emphasis in original; citations omitted))

The foregoing analysis performed by the ALJ reflects his consideration of plaintiff's longitudinal treatment history for back pain. However, the ALJ's clear recognition that this is a pain case does not compel his acceptance of plaintiff's allegations of the intenseness and persistence of the pain inasmuch as the record reflects that Green is capable of performing work activities even in light of his pain. In particular, no treating or examining physician opined that plaintiff was incapable of performing work activity on account of his back pain. In fact, one treating physician, Dr. Davis, agreed with the restrictions set forth in the Functional Capacity Evaluation performed at Rehab Associates on plaintiff on July 23, 2004, same reflecting a physical demand classification of medium to heavy by DOT standards. (*Compare* Tr. 106 *with* Tr. 99-105)

Additionally, the foregoing analysis reflects a proper application of this circuit's three-part pain standard. In his opinion, the ALJ clearly recognizes underlying medical conditions, that is, degenerative disc disease with mild stenosis, lumbar radiculopathy, and mild scoliosis of the lumbar spine. (Tr. 18; *see also* Tr. 15-16) The record supports the ALJ's determination that the objective medical evidence does not confirm the severity of pain plaintiff alleges arise from the foregoing conditions. (Tr. 90-91, 97-98, 106-111, 122, 127, 130, 133, 137, 140, 142-144, 148, 150 & 153) Notably, while x-rays

14

revealed degenerative scoliosis and L3-4 narrowing and MRI results reflected lateral recess stenosis, surgery was rejected as an option and there are no findings of muscle spasms or a significant decrease in Green's range of motion. (*See* Tr. 106-109; Tr. 110 ("He is able to rise up on his toes and rock back on his heels. His lumbar spine is nontender to palpation, no step-offs, and no paravertebral spasms. He is able to forward flex and touch his fingertips to the midtibia. He is able to extend less than 25% of normal, has symmetric lateral rotation, and bending. Bilateral hips, knees, and ankles are non-irritable, 5/5 strength, and sensate to light touch in all dermatome distributions with the exception of decreased light touch sensation in the anteromedial tibia on the left leg down to the ankle. He has a palpable posterior tibial pulse and no edema."); Tr. 122, 127, 130 (exams unremarkable); Tr. 142 ("No clubbing, cyanosis, or edema."))[5] In addition, the evidence of record as a whole does not reflect that the identified medical conditions are of such a severity that they can reasonably be expected to give rise to the disabling pain Green alleges. In this regard, while it is clear that plaintiff has received a number of epidural steroid injections to manage his pain, as aforesaid, surgery has been rejected

_____

[5]      On the one occasion in March of 2006 that Green presented to Dr. David Herrick with a positive straight leg raise bilaterally, the pain management doctor ordered a caudal epidural steroid injection. (Tr. 153; *see id*. ("The last one was in 2004."))

as an option and the orthopedic surgeon agreed with the restrictions reflected on the Functional Capacity Evaluation performed by Rehab Associates that plaintiff has the capacity to perform medium to heavy physical activities demanded by DOT standards (Tr. 106-107). When this evidence is combined with plaintiff's report of his daily activities (*see* Tr. 53 ("My usual daily activities are washing dishes, emptying the cat box, burn[ing] trash, walking, [and] yard work.")), it need be recognized that there is substantial support in the record for the ALJ's implicit determination that Green's back conditions could not reasonably be expected to give rise to the disabling pain he alleges.

The undersigned is of the opinion that the only manner in which the medical evidence of record in this case can be resolved is by recognizing that plaintiff experiences pain but that such pain does not preclude him from engaging in all work activity. More specifically, the evidence of record supports the ALJ's determination that plaintiff can engage in medium exertional work activities (Tr. 99-119) and can, therefore, perform his past relevant work as a small products assembler (Tr. 170). The Commissioner's fourth-step denial of benefits is due to be affirmed.

## **CONCLUSION**

The Magistrate Judge recommends that the decision of the

Commissioner of Social Security denying plaintiff benefits be affirmed.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 30th day of January, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

17

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**